UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| | |
|---|---|
| WILLIAM EDWARD LOWE, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:10-cv-294 |
| ) | |
| v. ) | Honorable Robert Holmes Bell |
| ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Defendant. ) | |
| _____) | |

This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3) seeking review of a final decision of the Commissioner of Social Security finding that plaintiff was not entitled to disability insurance benefits (DIB) and supplemental security income (SSI) benefits. Plaintiff filed his applications for benefits on February 28, 2007, alleging a November 18, 2006 onset of disability.[1] (A.R. 101-14). Plaintiff's disability insured status expired on December 31, 2008. Thus, it was plaintiff's burden on the claim for DIB benefits to submit evidence demonstrating that he was disabled on or before December 31, 2008. *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

Plaintiff's claims were denied on initial review. (A.R. 54-73). On June 3, 2009, he received a hearing before an administrative law judge (ALJ), at which he was represented by counsel.

---

[1] SSI benefits are not awarded retroactively for months prior to the application for benefits. 20 C.F.R. § 416.335; *see Kelley v. Commissioner*, 566 F.3d 347, 349 n. 5 (3d Cir. 2009); *see also Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004). The earliest month in which SSI benefits are payable is the month after the application for SSI benefits is filed. Thus, March 2007 is plaintiff's earliest possible entitlement to SSI benefits.

(A.R. 19-49). On June 10, 2009, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 10-14). On January 27, 2010, the Appeals Council denied review (A.R. 1-3), and the ALJ's decision became the Commissioner's final decision.

On March 26, 2010, plaintiff filed his complaint seeking judicial review of the Commissioner's decision denying his claims for DIB and SSI benefits. The four issues raised by plaintiff are as follows:

1.   The ALJ's misconduct denied plaintiff a fair hearing;

2.   The ALJ committed reversible error by failing to follow the opinion of plaintiff's treating physician;

3.   The ALJ did not have substantial evidence to support his finding that plaintiff could have performed medium work; and

4.    The ALJ committed reversible error by not following the testimony of the vocational expert to factually correct hypothetical questions.

(Plf. Brief at 8, docket # 10; Reply Brief at 1, docket # 13). Upon review, I find that plaintiff's arguments do not provide a basis for disturbing the Commissioner's decision. I recommend that the Commissioner's decision be affirmed.

**Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

**Discussion**

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from November 18, 2006, through December 31, 2008, but not thereafter. (A.R. 12). Plaintiff had not engaged in substantial gainful activity on or after November 18, 2006. (A.R. 12). The ALJ found that plaintiff's severe impairments were alcoholism and chronic headaches:[2]

> *Chronic headaches; alcoholism:*
> In November 2006 claimant reported an acute onset of left sided numbness, including the face, headache, pain in the neck and shoulder discomfort. The numbness resolved, but the pain in the neck and headaches persisted. The cervical spine appears normal on CT scan. There is CT scan evidence of increased size of the lateral ventricles consistent with communicating hydrocepahlus, but a normal spinal tap followed. An MRI showed some cerebellum midline structural abnormalities that neurosurgeon Darryl Varda, M.D. related to alcoholism. Dr. Varda did not believe that the claimant had a transient ischemic attack or sarcoid, but rather a complicated migraine episode. Claimant also had a mild action tremor in both arms. The remainder of the neurological examination was unremarkable (Exhibit 1F/13, 3F, 4F, 6F, 19F).
>
> Claimant is an alcoholic. He underwent a treatment program several years ago, but relapsed. In January 2007, he was drinking 12 beers per day. He is a thin individual who appears chronically ill with poor nutrition, likely attributed to his alcohol abuse (Exhibit 6F). There are no allegations of any mental repercussions from alcoholism. There is no evidence of any limitations in the claimant's functioning as a result of a mental condition.

---

[2]The record is replete with references to plaintiff's alcohol and drug abuse. (*See, e.g.*, A.R. 29-30, 41-42, 236-40, 246). Since 1996, the Social Security Act, as amended, has precluded awards of SSI and DIB benefits based upon alcoholism or drug addiction. *See* 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); 20 C.F.R. §§ 404.1535, 416.935; *see also Bartley v. Barnhart*, 117 F. App'x 993, 998 (6th Cir. 2004); *Hopkins v. Commissioner*, 96 F. App'x 393, 395 (6th Cir. 2004); *Snead v. Barnhart*, 360 F.3d 834, 835 (8th Cir. 2004). The claimant bears the burden of demonstrating that drug and alcohol addiction is not a contributing factor to his disability. *See Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007);*Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999); *see also Zarlengo v. Barnhart*, 96 F. App'x 987, 989-90 (6th Cir. 2004). Because plaintiff was found not to be disabled, the ALJ was not required to decide the issue of whether his alcohol and drug abuse were material to a finding of disability.

> *Non-severe left epicondylitis:*[3]
> Claimant reports a gradual onset of symptoms affecting his left arm since 2006. Treating specialist Ronald Ford, M.D., found limited grip strength on the left (non-dominant) hand with signs of lateral epicondylitis and cubital syndrome. Dr. Ford treated claimant with physical therapy and injection therapy with positive results. Claimant returned to work, but was eventually fired after a drug screening test was positive.[4] Nerve conduction studies demonstrated very mild slowing of the ulnar nerve across the elbow with no evidence of carpal, radial, or cubital tunnel syndrome. A left elbow x-ray was normal. In February 2007, a neurologist found no clinical signs of pathology in either upper extremity (Exhibits 5F, 7F, 13F). This medically documented impairment does not meet the durational requirement to be considered severe within the meaning of the Regulations.

(A.R. 12-13). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 13). The ALJ found that plaintiff retained the residual functional capacity (RFC) for medium work, "except that he should not be exposed to concentrated noise which exacerbates his headache[s], or to vibration, given his history of epicondylitis." (A.R. 13). The ALJ found that plaintiff's testimony regarding his subjective limitations was not fully credible:

> Claimant went back to work without restrictions in June 2006 after his elbow symptoms resolved but was eventually fired when h[is] urine drug screen tested positive. Claimant claims he stopped working because of numbness and tingling of two left fingers (Exhibits 5F, 7F). He testified to looking for work since November 2006 and to occasionally working. He testified that he cannot work because of headaches that became worse when bending and picking things up. He talked about the need to sit until the pain lets up. He said beer alleviates the headache. He drinks from about three or four in the afternoon through close to midnight. The headache starts in the morning as soon as he gets up from bed and moves around. He testified that medications make him tired and he is sensitive to noise, especially when tired.
>
> After careful consideration of the evidence, I find claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but his statements

---

[3] Epicondylitis is also known as "tennis elbow." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, 637 (31st ed. 2007).

[4] Dr. Ford testified in plaintiff's worker's compensation case that plaintiff's drug screen was positive for cocaine metabolites. (A.R. 238-39).

> concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity assessment.

(A.R. 14). The ALJ found that plaintiff was not disabled at step four of the sequential analysis because he was capable of performing his past relevant work as a general industrial laborer.[5] (A.R. 14).

### 1.

Plaintiff argues that the ALJ's "misconduct" denied him a fair hearing. (Plf. Brief at 8; Reply Brief at 3-4). He argues that the ALJ's inquiry whether Dr. Kutzasz "made up" his RFC report was misconduct that was, "in all probability, unique in the annals of Social Security law." (Plf. Brief at 9). Hyperbole aside, I find absolutely no evidence misconduct or bias.

The ALJ is presumed to have exercised his powers with honesty and integrity, and the plaintiff has the burden of overcoming the presumption of impartiality "with convincing evidence that a risk of actual bias or prejudgment is present." *Collier v. Commissioner*, 108 F. App'x 358, 364 (6th Cir. 2004) (citing *Schweiker v. McClure*, 456 U.S. 188, 196 (1982), and *Navistar Int'l*

---

[5]"Administrative law judges employ a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Social Security Act." *Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). Under the sequential analysis, "The claimant must first show that []he is not engaged in substantial gainful activity. Next, the claimant must demonstrate that []he has a 'severe impairment.' A finding of 'disabled' will be made at the third step if the claimant can then demonstrate that h[is] impairment meets the durational requirement and 'meets or equals a listed impairment.' If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that []he is incapable of performing work that []he has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work." *White v. Commissioner*, 572 F.3d 272, 282 (6th Cir. 2009); *see Lindsley v. Commissioner*, 560 F.3d 601, 602-03 (6th Cir. 2009).

*Transp. Corp v. EPA*, 921 F.2d 1339, 1360 (6th Cir. 1991)); *see Bailey v. Commissioner*, 413 F. App'x 853, 856 (6th Cir. 2011)("We presume that judicial and quasijudicial officers, including ALJs, carry out their duties fairly and impartially."). Plaintiff has the burden of providing "convincing evidence that a risk of actual bias or prejudgment is present." *See Bailey*, 413 F. App'x at 856; *see Collier*, 108 F. App'x at 364. Finally, for the alleged bias to be disqualifying, it must "stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966); *see Miller v. Barnhart*, 211 F. App'x 303, 305 n.1 (5th Cir. 2006). "[A]ny alleged prejudice on the part of the decisionmaker must be evident from the record and cannot be based on speculation or inference." *Carrelli v. Commissioner*, 390 F. App'x 429, 436-37 (6th Cir. 2010); *see Perschka v. Commissioner*, 411 F. App'x 781, 788 (6th Cir. 2010) ("An adverse ruling alone is not enough to support a finding of bias."). "[E]xpressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display" are insufficient to establish bias. *Liteky v. United States*, 510 U.S. 540, 555-56 (1994).

Plaintiff's claim of bias is based on a brief exchange between plaintiff's attorney and the ALJ regarding the total absence of progress notes supporting the opinions that plaintiff's treating family physician, Richard Kutzasz, D.O., expressed in a two-page report he submitted to the Michigan Department of Human Services (A.R. 318-19):

ALJ:   Well, what do they say then?  They say he has headaches.

ATTY:   He has headaches which can be debilitating, and I think in this case --

ALJ:   Do they restrict him at all from any activities based on his headaches?

| | |
|---|---|
| ATTY: | Yes, they do. If you look at 16F, he has standing and walking less than two hours. |
| ALJ: | Right. I mean other than in the report. I'm talking about treatment notes. |
| ATTY: | Well, I mean you know, the RFC gives is only less than 10 pounds of occasional lifting, limited repetitive -- |
| ALJ: | Yeah. |
| ATTY: | -- I mean those are real restrictions. |
| ALJ: | I see that. But it's my experience that a lot of times doctors fill out these reports that are not consistent with their notes. I'm looking for notes that would be consistent -- |
| ATTY: | I can check again, but I assume this doctor wouldn't complete -- I asked him for an updated RFC which was one of my forms which he wouldn't do, and he was going to send him out for an RFC. I don't think this doctor was going to fill out an RFC form for the State of Michigan and make this stuff up. |
| ALJ: | You don't? |
| ATTY: | No, I don't. |
| ALJ: | Okay. All right. All right, let me turn to Mr. Petrovich then. |

(A.R. 44).

The ALJ's comments were entirely appropriate. Plaintiff did not submit any progress notes from Dr. Kutzasz. ALJs routinely examine progress notes to determine whether restrictions proffered by a physician in support of his patient's claims for social security benefits are consistent with the doctor's treatment notes. *See Valdes v. Commissioner*, No. 1:08-cv-872, 2010 WL 911181, at * 3 (W.D. Mich. Mar. 12, 2010)(collecting cases). Among the more obvious reasons for not submitting progress notes[6] is to prevent the ALJ from undertaking this analysis. The absence of

---

[6]Progress notes may undermine an argument that a physician is a "treating physician" or reveal the claimant's failure to follow prescribed treatment. The social security regulations state that

progress notes left the extreme restrictions Kutzasz proffered in his September 12, 2007 report (A.R. 318-19) without support.[7]  I find no evidence that the ALJ was biased against plaintiff, much less the convincing evidence of actual bias that is necessary to overcome the presumption of impartiality.

**2.**

Plaintiff argues that the ALJ committed reversible error "by failing to follow the opinion of Plaintiff's treating physician[s]."  (Plf. Brief at 8).  Specifically, he asserts that the ALJ committed reversible error "by failing to give any consideration whatsoever to the opinions and evidence from Drs. Kutzasz and Klafeta, both of whom treated plaintiff on multiple occasions." (Plf. Brief at 9-10; *see* Reply Brief at 2-3).  This argument is patently meritless.

The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner.  20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004); *see also Sims v. Commissioner*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he determination of disability [is] the prerogative of the

---

the claimant bears the burden of demonstrating "good reason" for his failure to follow prescribed treatment.  20 C.F.R § 404.1530(b), 416.930(b).

[7]The absence of progress notes significantly undermines an argument that a physician's opinions are entitled to great weight. *See, e.g., Bruza v. Commissioner*, 1:07-cv-1207, 2008 WL 3979261, at * 6 (W.D. Mich. Aug. 4, 2008) ("The absence of progress notes and other contemporaneous medical records regarding the treatment provided by [a physician] for the period at issue entitles his unadorned opinion to virtually no weight.").  The hearing transcript makes pellucid that plaintiff's attorney recognized that his client had a serious problem stemming from the lack of evidence supporting Kutzasz's opinions.  Counsel stated that he was "mystified" why there were not more records from Dr. Kutzasz's office.  (A.R. 22-24).  Excluding duplicates (A.R. 315-16), plaintiff filed a total of seven pages of materials from Dr. Kutzasz's office: (1) July 12, 2007 prescriptions (A.R. 281); (2) the September 12, 2007 report to the Michigan Department of Human Services (A.R. 318-19); (3) a December 2007 letter from Melissa Brandt of the Michigan Department of Human Services (A.R. 320); (4) blood tests dated June 22, 2007 (A.R. 321-22); and (5) urine tests dated December 14, 2007 (A.R. 323).

Commissioner, not the treating physician."). A treating physician's opinion that a patient is disabled is not entitled to any special significance. *See* 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007). Likewise, "no special significance" is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirements of a listed impairment, because they are administrative issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009).

"Generally, the opinions of treating physicians are given substantial, if not controlling deference." *Warner v. Commissioner*, 375 F.3d at 390. A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see Cox v. Commissioner*, 295 F. App'x 27, 35 (6th Cir. 2008) ("This court generally defers to an ALJ's decision to give more weight to the opinion of one physician than another, where, as here, the ALJ's opinion is supported by evidence that the rejected opinion is inconsistent with the other medical evidence in the record."). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton*, 246 F.3d at 773; *see Kidd v. Commissioner*, 283 F. App'x 336, 340 (6th Cir. 2008). An opinion that is based on the claimant's reporting of his symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Mitchell v. Commissioner*, 330 F. App'x 563, 570 (6th Cir. 2009); *Smith v. Commissioner*, 482 F.3d 873, 876-77 (6th Cir. 2007).

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record, the opinion should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. § 404.1527(d); *see also Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d at 875-76; *see Allen v. Commissioner*, 561 F.3d at 651; *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "The procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Cole v. Astrue*, No. 09-4309, __ F.3d __, 2011 WL 2745792, at * 4 (6th Cir. July 15, 2011).

A.  <u>Dr. Kutzasz</u>

The ALJ considered the extreme and unsupported restrictions proffered by Dr. Kutzasz and found that they were entitled to little weight:

> The opinion of primary care physician Richard Kustaz, DO regarding claimant's limitations secondary to weakness in the left arm from a stroke was considered, but afforded no significant weight as it is not supported by the evidence and is inconsistent with medical

evidence of record (Exhibit 15F).[8] In turn, considerable weight is afforded to the opinion of specialist Mark DeHann, MD, which is based on clinical evaluation and objective medical evidence that does not support claimant's allegations of symptoms. Dr. DeHann did not find any ongoing condition that could keep claimant from working (Exhibit 7F). This finding is consistent with the report by a State agency medical examiner [who] reviewed the record in June 2007 and concluded the claimant retain[ed] the residual functional capacity for medium work.

(A.R. 14). The ALJ's findings were appropriate and well-supported. I find no violation of the treating physician rule and that the ALJ complied with the procedural requirement of providing "good reasons" for the limited weight he gave to Dr. Kutzasz's opinions.

### B. Dr. Klafeta

Plaintiff argues that the ALJ "failed to give any consideration whatsoever" to Dr. Steve Klafeta's opinions. (Plf. Brief at 9-10). Dr. Klafeta is a neurosurgeon at Saint Mary's Neuroscience Program. (A.R. 208). On November 30, 2006, plaintiff was examined at St. Mary's by Aaron L. Poquette, P.A. (A.R. 209). Plaintiff stated that he drank approximately 30 cans of beer per week. (A.R. 209). He related that on or about November 15, 2006, he had developed left sided

---

[8]The record suggests that Dr. Kutzasz saw plaintiff on four occasions: June 7, July 12, and September 6, 2007, and January 22, 2009. (A.R. 167, 171, 184, 281, 315). Plaintiff's attorney stated that his client said that he was seeing Dr. Kutzasz "regularly." (A.R. 22). He did not elicit testimony from plaintiff establishing how often Dr. Kutzasz treated plaintiff. The closest plaintiff's attorney came was the following compound question which assumed that plaintiff "fairly regularly" saw Dr. Kutzasz:

  Q   Now I know you have this doctor that you see fairly regularly although its hard to tell from his notes. Has he got any recommendations for you? I know you consulted with a neurosurgeon, you know, he sent you out to a few places. Is there anything they've talked about to try and help your headaches?
  A   No, just taking my medication and keep going back for MRIs to see if anything has changed in my head.
  Q   You haven't had an MRI in awhile, have you?
  A   No.

(A.R. 40). Thus, there is no evidence supporting a claim of "regular" treatment.

numbness, left sided facial numbness, and headaches. A CT of plaintiff's head had revealed some ventriculomegaly, without any other significant pathology noted. The CT of plaintiff's cervical spine had revealed no significant numbness or pathology. Plaintiff's primary complaints as of November 30, 2006, were neck pain and some shoulder discomfort. (A.R. 208). Plaintiff related that during recent weeks he had been "finishing a pole barn" and had been able to do it "quite comfortably without too much problem." (A.R. 208). Plaintiff had no lower extremity problems. He denied any visual disturbances, nausea, vomiting, ringing in ears, weakness, sensory loss or photophobia. (A.R. 208). Physician's Assistant Poquette indicated that the treatment plan was to obtain an MRI of plaintiff's brain and cervical spine in an effort to determine the cause of plaintiff's reported headaches and cervical pain. (A.R. 209).

On December 21, 2006, Dr. Klafeta completed a Michigan Department of Human Services form[9] indicating that plaintiff had been examined at St. Mary's on November 30, 2006 (A.R. 205), and that he should be considered totally disabled until the results of MRI tests scheduled for December 27, 2006, were available. (A.R. 206). The MRIs were performed on December 27, 2006. Plaintiff's cervical spine MRI returned normal results. (A.R. 214). His brain MRI revealed no abnormal enhancement. (A.R. 212). Dr. Bixler recommended a sampling of plaintiff's spinal fluid and other tests to rule out infectious disease as a possible cause of plaintiff's headache complaints. (A.R. 212). A January 2, 2007 lumbar puncture procedure yielded normal results. (A.R. 210, 259). The ALJ considered all plaintiff's objective test results. (A.R. 12). On January 5, 2007, plaintiff was treated by emergency room physicians at St. Mary's Health Care. He

---

[9]The form's instructions stated that it was to be completed "by a physician," which may explain why it was signed by Dr. Klafeta rather than Physician's Assistant Poquette.

complained that he had been experiencing headaches and vomiting. Plaintiff was treated with saline fluid and provided with prescription headache medication. He was advised to follow-up with Dr. Klafeta. (A.R. 300-13).

Dr. Klafeta referred plaintiff to a specialist, Darryl J. Varda, M.D., of Neurological Associates of West Michigan, P.C., for an evaluation of a questionable abnormality appearing on one of plaintiff's MRI scans. (A.R. 255-58). Dr. Varda noted that plaintiff had a history of heavy alcohol use and "continued to abuse alcohol, drinking 6-12 beers per day." (A.R. 255). Upon examination, Dr. Varda noted plaintiff's chronically ill appearance and "mild intention tremor in both upper extremities. The remainder of his exam was unremarkable." (A.R. 255). Dr. Varda concluded, "It is clear that he has alcoholism. The MRI abnormality, I suspect, is an incidental finding and not related to his presenting neurologic symptoms." (A.R. 255). He expressed doubt that plaintiff's transient sensory episode had been a transient ischemic attack. (A.R. 255). The ALJ gave significant weight to Dr. Varda's medical opinions. (A.R. 12).

Plaintiff's argument is based on a mischaracterization of Dr. Klafeta's temporary, precautionary restriction imposed over a six-day holiday period until MRIs could be performed. "[A]n ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Daniels v. Commissioner*, 152 F. App'x 485, 489 (6th Cir. 2005); *see Boseley v. Commissioner*, 397 F. App'x 195, 199 (6th Cir. 2010). It is doubtful on this record that Dr. Klafeta was a treating physician, *see Kornecky v. Commissioner*, 167 F. App'x 496, 506-07 (6th Cir. 2006), but assuming that he was, no violation of the treating physician rule occurred.

**3.**

Plaintiff's third statement of error is that the ALJ "did not have substantial evidence to support his finding that Plaintiff could have performed medium work." (Plf. Brief at 8). There is no developed argument in plaintiff's brief or reply brief corresponding to this statement of error.[10] Perfunctory arguments are deemed waived. *See Geboy v. Brigano*, 489 F.3d 752, 767 (6th Cir. 2007); *see also Anthony v. Astrue*, 266 F. App'x 451, 458 (6th Cir. 2008).

Assuming the issue had not been waived, I find that there is more than substantial evidence supporting the ALJ's factual finding that plaintiff retained the RFC for medium work. The objective evidence does not indicate a greater level of restriction and the ALJ found that plaintiff's testimony regarding his subjective limitations was not fully credible. RFC is the most, not the least, a claimant can do despite his impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Griffith v. Commissioner*, 217 F. App'x 425, 429 (6th Cir. 2007).

**4.**

Plaintiff's argument that the ALJ "committed reversible error by not following the testimony of the vocational expert to factually correct hypothetical questions" is, at best, an ill-focused challenge to the ALJ's factual finding regarding his credibility. The argument found in plaintiff's brief is a vestige from some other case: "While the ALJ correctly found that Plaintiff could not return to his past relevant work, he incorrectly found that there were other jobs plaintiff

---

[10]Plaintiff states that he "conceded at the beginning of his hearing that his epicondylitis was not a significant factor to be considered" and "acknowledged that the problem with his arm had never been anything more than temporary." (Plf Brief at 9; Reply Brief at 2). Plaintiff's reply brief ends with a confused assertion that there was "no basis whatsoever for the ALJ to conclude that Plaintiff could perform *sedentary* work . . . ." (Reply Brief at 4) (emphasis added).

could have performed." (Plf. Brief at 11). Here, the ALJ found that plaintiff was not disabled at step 4 of the sequential analysis because he *was capable of performing his past relevant work*. (A.R. 14) (emphasis added). The ALJ never reached step 5 of the sequential analysis. Thus, any criticism of a hypothetical question the ALJ did not rely on when he found that plaintiff was not disabled is irrelevant.

Plaintiff testified that he drank a large quantity of alcohol on a daily basis, and that when he woke up the next day, he suffered from a headache and other adverse symptoms. (A.R. 29-30, 41-42). The ALJ found that plaintiff's testimony claiming that his headaches were disabling was not fully credible. (A.R. 14). Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See, e.g.*, *Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). It is the ALJ's function to determine credibility issues. *See Siterlet v. Secretary of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). The court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528; *see McGlothlin v. Commissioner*, 299 F. App'x 516, 523-24 (6th Cir. 2008). The court cannot substitute its own credibility determination for the ALJ's. The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the deferential "substantial evidence" standard. "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes]

not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge h[is] subjective complaints." *Buxton v. Halter*, 246 F.3d at 773. "Since the ALJ has the opportunity to observe the demeanor of the witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded deference." *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993); *see White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009). I find that there is more than substantial evidence supporting the ALJ's credibility determination and that he provided a more than adequate explanation why he found that plaintiff's testimony was not fully credible. *See Rogers v. Commissioner*, 486 F.3d 234, 247-49 (6th Cir. 2007).

### Recommended Disposition

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.

Dated:  August 26, 2011           /s/  Joseph G. Scoville
                                  United States Magistrate Judge

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).